**Fill in this information to identify your case:**

Debtor 1: NICHOLAS J. CAGE
First Name | Middle Name | Last Name

Debtor 2
(Spouse, if filing) First Name | Middle Name | Last Name

United States Bankruptcy Court for the: Northern District of Texas
(State)

Case number 19-32436
(if known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement                                  12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. Who is the creditor?  CarMax Auto Finance
   Name of the creditor

2. How much is the debt?
   On the date that the bankruptcy case is filed  $13,226.78
   To be paid under the reaffirmation agreement  $13,228.39
   $461.59 per month for 31 months (if fixed interest rate)

3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)
   Before the bankruptcy case was filed  4.45 %
   Under the reaffirmation agreement  4.45 %  ☑ Fixed rate
                                              ☐ Adjustable rate

4. Does collateral secure the debt?
   ☐ No
   ☑ Yes. Describe the collateral.  Retail Installment Contract for: 2014 DODGE CHARGER
   Current market value  $17,075.00

5. Does the creditor assert that the debt is nondischargeable?
   ☑ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.

   Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement
   
   6a. Combined monthly income from line 12 of Schedule I  $2479 | 6e. Monthly income from all sources after payroll deductions  $2479
   
   6b. Monthly expenses from line 22c of Schedule J  $2413 | 6f. Monthly expenses  –$2413
   
   6c. Monthly payments on all reaffirmed debts not listed on Schedule J  –$0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses  –$0
   
   6d. Scheduled net monthly income  $66 | 6h. Present net monthly income  $66
   Subtract lines 6b and 6c from 6a.  Subtract lines 6f and 6g from 6e.
   If the total is less than 0, put the number in brackets.  If the total is less than 0, put the number in brackets.

Debtor 1  NICHOLAS J. CAGE
         First Name  Middle Name  Last Name

Case number (if known)  19-32436

**7. Are the income amounts on lines 6a and 6e different?**
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

**8. Are the expense amounts on lines 6b and 6f different?**
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

**9. Is the net monthly income in line 6h less than 0?**
☒ No
☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).
Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

**10. Debtor's certification about lines 7-9**

I certify that each explanation on lines 7-9 is true and correct.

If any answer on lines 7-9 is Yes, the debtor must sign here.

X _____     X _____
Signature of Debtor 1              Signature of Debtor 2 (Spouse Only in a Joint Case)

If all the answers on lines 7-9 are No, go to line 11.

**11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?**
☐ No
☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
   ☐ No
   ☒ Yes

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

X _Troy Thompson_   Date 08/21/2019
Signature                                         MM/DD/YYYY

_Troy Thompson - Creditor_
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Official Form 427       Cover Sheet for Reaffirmation Agreement       page 2

☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship

Form B240A (4/10)

# UNITED STATES BANKRUPTCY COURT
Northern DISTRICT OF Texas

In re NICHOLAS J. CAGE

Debtor(s).

Case No. 19-32436

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** CarMax Auto Finance

☐ Check this box if creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important Disclosures, Instructions and Definitions found in Part V of this form.

A. Brief description of the original agreement being reaffirmed: Retail Installment Contract for: 2014 DODGE CHARGER

B. *AMOUNT REAFFIRMED:* $13,228.39

> The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include principal, interest, and fees and costs (if any) arising on or before 07/29/19, which is the date of the Disclosure Statement portion of this form (Part V).
>
> *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 4.45%.

> *See definition of "Annual Percentage Rate" in Part V, Section C below.*
> This is a (check one)   ☒ Fixed Rate   ☐ Variable Rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form B240A – Reaffirmation Documents                                        Page 2

D.  Reaffirmation Agreement Repayment Terms (check and complete one):

    [x] $461.59 per month for 31 months starting on 08/12/19.

    [ ] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount: _____

E.  Describe the collateral, if any, securing the debt:

    Description: 2014 DODGE CHARGER
    Current Market Value: $17,075.00

F.  Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

    [x] Yes   What was the purchase price for the collateral?   $24,777.57
    [ ] No   What was the amount of the original loan?   $_____

G.  Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including (fees and costs)* | $13,228.39 | $13,228.39 |
| Annual Percentage Rate | 4.45% | 4.45% |
| Monthly Payment | $461.59 | $461.59 |

H.  [ ] Check this box is the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A.  Were you represented by an attorney during the course of negotiating this agreement?
    Check one.  [x] Yes  [ ] No

2.  Is the creditor a credit union?
    Check one.  [ ] Yes  [x] No

Form B240A – Reaffirmation Documents   Page 3

B. If your answer to EITHER question 1, or 2, above is "No" complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions (take-home pay plus any other income)   $ 2479

   b. Monthly expenses (including all reaffirmed debts except this one)   $ 1951.41

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)   $ 527.59

   d. Amount of monthly payment required for this reaffirmed debt   $ 461.59

   *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the tope of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:
   ☑ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you am reaffirming, including this one because:

   _____
   _____
   _____

   Use an additional page if needed for a full explanation.

C. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

   *Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form B240A – Reaffirmation Documents                                                        Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above;

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this Reaffirmation Agreement voluntarily and fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (if this is a joint Reaffirmation Agreement, both debtors must sign):

Date: 8/21/19                           Signature: _____ Debtor

Date: _____                   Signature: _____ Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor:  CarMax Auto Finance                   225 Chastain Meadows Court
           Print Name                            Kennesaw, GA 30144
                                                 Address

_____ Troy Thompson                    _____ Troy Thompson  07/29/19
Print Name of Representative                     Signature                      Date

Form B240A – Reaffirmation Documents                                                        Page 5

PART IV. CERTIFICATION BY DEBTORS ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: 1) this agreement represents a fully informed and voluntary agreement by the debtor; 2) this reaffirmation agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and 3) I have fully advised the debtor of the legal effect and consequences of this reaffirmation agreement and any default under this reaffirmation agreement.

☐ A presumption of undue hardship has been established with respect to this reaffirmation agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box if the presumption of undue hardship is checked on page 1 and the creditor is not a Credit Union.*

Date: 8/21/19                     Signature of Debtor's Attorney: Donald E. Hood
                                  Print Name of Debtor's Attorney DONALD E. HOOD

Form B240A – Reaffirmation Documents                                                                                          Page 6

### PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in the Instructions provided in Part V, Section B. below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

#### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm the debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

**Form B240A – Reaffirmation Documents**  Page 7

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you WERE represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you WERE NOT represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your reaffirmation agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the Reaffirmation Agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this reaffirmation agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the reaffirmation agreement if both are reaffirming the debt.

**Form B240A – Reaffirmation Documents** Page 8

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification by Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you were not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion For Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.*
You can use Form B240B to do this.

### C. DEFINITIONS

1. "AMOUNT REAFFIRMED" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part 1, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. "ANNUAL PERCENTAGE RATE" means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. "CREDIT UNION" means a financial institution as defined in 12 U.S.C. §. 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

Form B240A (4/10)

# UNITED STATES BANKRUPTCY COURT
## Northern DISTRICT OF Texas

In re NICHOLAS J. CAGE    Case No. 19-32436
          Debtor(s).      Chapter 7

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because (provide any additional relevant reasons the court should consider):

_____
_____
_____
_____
_____

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐  11 U.S.C. §524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐  11 U.S.C. §524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: _____
         *(Debtor)*

_____
*(Joint Debtor, if any)*

Date: _____

Form B240A (4/10)

# UNITED STATES BANKRUPTCY COURT
### Northern DISTRICT OF Texas

In re NICHOLAS J. CAGE  
          Debtor(s).

Case No. 19-32436  
Chapter 7

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) NICHOLAS J. CAGE has (have) filed a motion for approval of the reaffirmation agreement dated 07/29/19 made between the debtor(s) and creditor CarMax Auto Finance. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____.

COURT ORDER:

☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____  
*United States Bankruptcy Judge*

# CarMax® RETAIL INSTALLMENT CONTRACT

Contract Number _____    Contract Date 02/06/2017

| | | | |
|---|---|---|---|
| Seller | CarMax Auto Superstores, Inc. | 8400 ANDERSON BLVD, FORT WORTH, TX | 76120 |
| | Name | Address | Zip Code |
| Buyer | NICHOLAS JARRETT CAGE | 804 WEST ROYAL LN, Apt. 213, IRVING, TX | 75039 |
| | Name | Address | Zip Code |
| Co-Buyer | | | |
| | Name | Address | Zip Code |

The Buyer is referred to as "you" or "your". The Seller is referred to as "we" or "us". This contract may be transferred by the Seller.

**Promise To Pay.** The credit price is shown below as the "Total Sale Price". The "Cash Price" is also shown below. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments according to the Payment Schedule in this contract. If more than one person signs as Buyer, you agree to keep all the promises in this contract even if the others do not.

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. | Total Sale Price  The total cost of your purchase on credit, including your downpayment of $ 1,500.00 |
|---|---|---|---|---|
| 4.45 % | $ 2,917.83  e* | $ 24,777.57 | $ 27,695.40  e* | $ 29,195.40  e* |

e means an estimate

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 60 | $ 461.59 | Monthly, beginning 03/12/2017 |

**Security.** We will have a security interest in the motor vehicle being purchased.
**Late Charge.** If we do not receive your entire payment within 15 days after it is due, you will pay a late charge of 5% of the scheduled payment.

**Prepayment.** If you pay early, you will not have to pay a penalty.
**Additional Information.** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.5. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term 60 (in months)

WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE GAP CONTRACT. You can cancel the GAP contract without charge for a period of 30 days from the date of this contract, or for the period stated in the GAP contract, whichever period ends later.

I want the optional GAP contract.
Buyer Signs X _____

**\*A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.**

**\*Un cargo documental no es un cargo oficial. La ley no exige qe se imponga un cargo documental. Pero éste podria cobrarse a los compradores por el manejo de la documentación en relación a la venta. Un cargo documental no puede exceder una cantidad razonable acordada por las partes. Esta notificación se exige por ley.**

Vehicle you are purchasing:
Year/Make/Model 2014/DODGE/CHARGER
VIN 2C3CDXCTXEH288326
New ____ Used X
You have thoroughly inspected, accepted, and approved of the Vehicle in all respects.
Use for which purchased:
Personal, Family, or Household X
Business or Commercial ____ Agricultural ____
*Trade-In(s)*:
Year/Make/Model N/A
VIN N/A
Year/Make/Model N/A
VIN N/A

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| **A. CASH PRICE** | | |
| 1. Cash Price of Vehicle | $ | 21,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 0.00 |
| 3. Sales/Excise Tax | $ | 1,374.88 |
| 4. Other: N/A | $ | 0.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Total Cash Price [1 through 5] | $ | 23,372.88 |
| **B. DOWNPAYMENT AND CREDITS** | | |
| 1. Cash Downpayment | $ | 1,500.00 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
|    a. Value of "Trade-In" | $ | 0.00 |
|    b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
|    c. Pay-Off of "Trade-In" | $ | 0.00 |
|    d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.6. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Total Downpayment [1 through 5] | $ | 1,500.00 |
| **C. UNPAID BALANCE OF CASH PRICE [A.6. minus B.6.]** | $ | 21,872.88 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** (Seller may keep part of these amounts.) | | |
| 1. Documentary Fee* | $ | 150.00 |
| 2. Dealer's Inventory Tax | $ | 51.94 |
| 3. To Public Officials or State | | |
|    a. Government Certificate of Title Fee | $ | 33.00 |
|    b. Government License and Registration Fees | $ | 70.75 |
|    c. County Fees | $ | 10.00 |
|    d. TX Temporary License Plate Fee | $ | 5.00 |
|    e. Government Vehicle Inspection Fees | $ | 0.00 |
|    f. N/A | $ | 0.00 |
| 4. To Fidelity Warranty Services, Inc. for Optional Extended Service Contract | $ | 2,099.00 |
| 5. Optional GAP Waiver Agreement (GAP Contract) | $ | 485.00 |
| 6. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 7. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 6] | $ | 2,904.69 |
| **E. AMOUNT FINANCED [C plus D.7.]** | $ | 24,777.57 |

Taxes, title fee, license fee, and any state inspection fee will be paid by Seller to government agencies. Documentary fee and deputy service fee will be retained by Seller and the Seller may also retain parts of the insurance, service contracts, and other charges.

---

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials X _____    Co-Buyer's Initials _____

Business ID RIC9043
Order # 1591029
Revision Date 09/15

(carmax.com)

Reprint #: 0    DMS Tracking #: 4955772
Printed 02/06/2017 06:36 pm 1 of 1

MIS ID 7111002
Legal - GF

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**YOUR REPRESENTATIONS.** You promise that you have given true and correct information in your credit application. You understand that in entering this contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

**RETURNED CHECK CHARGE.** You will pay us a returned check charge of $30 for each check that is not honored by your financial institution. The fee can be added to the amount you owe or collected separately.

**FINANCE CHARGES.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
　　(1) earned but unpaid finance charge; and
　　(2) to anything else you owe under this agreement.

**HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge and your last payment will be more than your final scheduled payment. If you make your scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase.

**INTEREST AFTER MATURITY.** If you do not pay all you owe when the final payment becomes due, or you do not pay all that you owe if we demand payment in full under this contract, you will pay an interest charge on the amount that is still unpaid. The amount owed will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this contract until paid in full.

**TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

**USE AND TRANSFER OF THE MOTOR VEHICLE.** You will not sell or transfer the motor vehicle without our written permission. If you do sell or transfer the motor vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00. You will promptly tell us in writing if you change your address or the address where you keep the motor vehicle. You will not remove the motor vehicle from Texas for more than 30 days unless you first get our written permission.

**CARE OF THE MOTOR VEHICLE.** You agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the motor vehicle. You will keep the motor vehicle in good repair. You will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, we may pay the third party any cost required to free the motor vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the motor vehicle. If you do not pay this amount, we may repossess the motor vehicle and add that amount to the amount you owe. If we do not repossess the motor vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

**AGREEMENT TO KEEP MOTOR VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas. The insurance must include collision coverage and either comprehensive or fire, theft, and combined additional coverage.

**OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE MOTOR VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the motor vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the motor vehicle, unless we agree otherwise in writing. However, if the motor vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the motor vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the motor vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

**RETURNED OPTIONAL SERVICE AND GAP CONTRACT CHARGES.** If we get a refund on service or GAP contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

**SECURITY INTEREST.** To secure all you owe on this contract and all your promises in it, you give us a security interest in:
- The motor vehicle including all accessories and parts now or later attached, and any other goods financed in this contract;
- All insurance proceeds and other proceeds received for the motor vehicle;
- Any GAP, service contract or other contract financed by us and any proceeds of those contracts; and
- Any refunds of charges included in this contract for GAP or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the motor vehicle.

**DEFAULT.** You will be in default if:
- You do not pay any amount when it is due;
- You break any of your promises in this agreement;
- You allow a judgment to be entered against you or the collateral; or
- You file bankruptcy, bankruptcy is filed against you, or the motor vehicle becomes involved in a bankruptcy.

If you default, we can exercise our rights under this contract and our other rights under the law.

**OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**REPOSSESSION:** If you default, we may repossess the motor vehicle from you if we do so peacefully. If any personal items are in the motor vehicle, we can store them for you and give you written notice at your last address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**YOUR RIGHT TO REDEEM:** If we take your motor vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the motor vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the motor vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE:** If you don't pay us to get the motor vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it in a public or private sale. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the motor vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

**COLLECTION COSTS:** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows.

**CANCELLATION OF OPTIONAL GAP AND SERVICE CONTRACTS:** This contract may contain charges for GAP or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the motor vehicle.

**LEGAL LIMITATIONS ON OUR RIGHTS:** If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**"TRADE-IN" AND DOWNPAYMENT.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this contract and that you have not borrowed it.

**COMMUNICATIONS.** You agree that we may monitor and record telephone calls regarding this contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers you provide in any manner and at any time.

**APPLICABLE LAW.** Federal and Texas law apply to this contract.

---

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____　　Co-Buyer's Initials _____

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

### ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____   Co-Buyer's Initials _____

## RETAIL INSTALLMENT CONTRACT

*Other Important Agreements*

---

### NO LIABILITY INSURANCE INCLUDED

THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

---

**PROPERTY INSURANCE:** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas. You agree to give us proof of property insurance. You must name us as the person to be paid in the event of damage or loss.

**YOUR INSURANCE INFORMATION**

LIENHOLDER/LOSS-PAYEE _CarMax Business Services, LLC_     INSURED'S NAME _NICHOLAS J CAGE_

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ _500.00_     COLLISION $ _500.00_

INSURANCE COMPANY _USAA_

POLICY NUMBER _____     EFFECTIVE DATE _01/01/2017_     EXPIRATION DATE _01/01/2018_

INSURANCE AGENT NAME _AGENT_     TELEPHONE NUMBER _(877) 531-8722_

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Agreement To Keep Vehicle Insured section on Page 2 of this contract.

**USED CAR BUYERS GUIDE.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**SPANISH TRANSLATION:** GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**SELLER'S DISCLAIMER OF WARRANTIES.** UNLESS THE SELLER MAKES A WRITTEN WARRANTY, OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, THE SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, ON THE MOTOR VEHICLE, AND THERE WILL BE **NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.** THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE MOTOR VEHICLE THAT THE MOTOR VEHICLE MANUFACTURER MAY PROVIDE.

**VEHICLE RETURN POLICY.** You may return the vehicle to CarMax for a refund within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

**OCCC NOTICE:** For questions or complaints about this contract, contact _CarMax Business Services, LLC_ at _(800) 925-3612; CarMax Auto Finance, 225 Chastain Meadows Ct, Ste 210, Kennesaw, GA 30144_.
The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

**INTEGRATION AND SEVERABILITY CLAUSE.** This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

Any change to this contract must be in writing. Both you and we must sign it. No oral modifications to this contract are binding.

Buyer X _[signature]_     Co-Buyer _____

**CONSUMER WARNING:** Notice to the buyer—Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 4. By signing below you represent that you have read and agree to the terms on all pages of this contract, including the arbitration provision on page 3. You acknowledge receipt of a completed copy of this contract and confirm that before you signed it you were free to take it and review it.

Seller _CarMax Auto Superstores, Inc._     Buyer's Signature _[signature]_

By _[signature]_     Co-Buyer's Signature _____

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

---

### ASSIGNMENT

Seller hereby sells, assigns and transfers to _CarMax Business Services, LLC_ _____ (Assignee) this contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor _[signature]_

Date _Feb 06, 2017_     Title _BOA_



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

## CarMax Auto Finance

### Lien and Title Information

**Account Information**

| | | | |
|---|---|---|---|
| **Account Number** | XXX6569 | **Financed Date** | 2/6/2017 |
| **Loan Number** | | **Perfected Date** | 3/2/2017 |
| **Branch** | 7112 | **Payoff Date** | |
| **Borrower 1** | CAGE, NICHOLAS J | **Dealer ID** | 7112 |
| **Borrower 2** | | **Dealer** | FWA - Fort Worth/Arlington |
| **Borrower Address** | 804 WEST ROYAL LN 213<br>IRVING, TX 75039 | **Dealer Address** | 8400 ANDERSON BLVD<br>FORT WORTH, TX 76120 |

**Lienholder**

| | |
|---|---|
| **ELT Lien ID** | 20104752500 |
| **Lienholder** | CARMAX BUSINESS SERVICES LLC |
| **Lienholder Address** | PO BOX 440609<br>KENNESAW, GA 30160 |
| **Lien Release Date** | |

**Vehicle and Titling Information**

| | | | |
|---|---|---|---|
| **VIN** | 2C3CDXCTXEH288326 | **Issuance Date** | 3/2/2017 |
| **Title Number** | 22035342786130420 | **Received Date** | 3/2/2017 |
| **Title State** | TX | **ELT/Paper** | ELECTRONIC |
| **Year** | 2014 | **Odometer Reading** | 46306 |
| **Make** | DODG | **Branding** | |
| **Model** | | | |
| **Owner 1** | NICHOLAS JARRETT CAGE | | |
| **Owner 2** | | | |
| **Owner Address** | APT 213<br>804 WEST ROYAL LANE<br>IRVING, TX 75039 | | |

**Printed:** Wednesday, August 28, 2019 11:07:37 AM PST